# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re:<br><br>JOHN ANDREAS TSIAOUSHIS,<br><br>　　　Debtor. | Case No.   05-15135-RGM<br>(Chapter 11) |
| JANET M. MEIBURGER, TRUSTEE,<br><br>　　　Plaintiff,<br><br>vs.<br><br>ENDEKA ENTERPRISES, L.L.C., *et al.*,<br><br>　　　Defendants. | Adv. Proc. No. 06-1167 |

## MEMORANDUM OPINION

THIS CASE is before the court on the chapter 11 trustee's motion for summary judgment as to Count II of the complaint. Count II seeks to declare ¶¶9.1 and 9.2 of the operating agreement of Endeka Enterprises, L.L.C. to be valid and fully enforceable. They provide that the company will be dissolved upon the bankruptcy of a member and that upon dissolution the members "shall proceed with dispatch and without any unnecessary delay to sell or otherwise liquidate the Company Property". Operating Agreement, ¶¶9.1 and 9.2. James Calomiris opposes the motion, asserting that the operating agreement is an executory contract and that the provision for automatic dissolution upon the filing of bankruptcy by a member is an *ipso facto* clause rendered unenforceable by §365(e)(1) of the Bankruptcy Code.

Endeka owns real estate in the District of Columbia and operates a restaurant on the premises. The trustee asserts that the primary value of Endeka to the bankruptcy estate is in the liquidation of the company. She believes that if the primary assets of the company, the real estate

1

and the restaurant, are sold there will be a significant distribution to the members and, thereafter, to the creditors of the estate. On the other hand, if the company continues in operation, she believes that the value of the estate's membership interest in the company will be diluted and that any significant distribution to the members from the cash flow is unlikely. A dispute as to the debtor's ownership interest in Endeka makes a voluntary liquidation problematic. The trustee asserts that Tsiaoushis and Calomiris each own 48.25% of the company and that the remaining interest is held by two other members. Calomiris asserts that he is a majority owner. While the debtor's ownership interest must eventually be determined, the trustee looks to the operating agreement to assist her in obtaining liquidation of the company. Calomiris is the sole manager.

Limited liability companies are relatively new statutory creations and there is little law addressing the question of whether a limited liability company's operating agreement is an executory contract. Calomiris argues that partnership agreements, whether general partnerships or limited partnerships, are executory contracts. *But see Samson v. Prokopf (In re Smith)*, 185 B.R. 285, 292-294 (Bankr.S.D.Ill. 1995); *In re LaVail*, 144 B.R. 897, 898 (Bankr.D.N.M. 1992). He then argues that because a limited liability company more closely resembles a partnership than a corporation, operating agreements are also executory contracts. Calomiris misunderstands the analysis required by §365(e). The effort is not to determine whether all general partnership agreements or all limited partnership agreements or all limited liability company operating agreements are or are not executory contracts, but to determine whether a particular agreement is an executory contract. While decisions concerning partnership agreements are helpful in understanding what constitutes an executory contract, they are not determinative of whether all operating agreements are or are not executory contracts. Courts considering whether an operating agreement is an executory contract examined the operating agreement before it. They did not endeavor to create a *per se* rule that all

limited liability company operating agreements are or are not executory contracts. Instead, they looked at the facts and circumstances of each case to determine the status of a particular operating agreement.

This court followed that individualized analysis *In re Garrison-Ashburn, L.L.C.*, 257 B.R. 700 (Bankr.E.D.Va. 2000). The court first noted that although the Bankruptcy Code does not define the term "executory contract", legislative history and case law cite with approval Professor Vern Countryman's definition: "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 460 (1973). The court then analyzed the operating agreement to determine whether there were unperformed obligations on the part of both the debtor and the other party. In *Garrison-Ashburn,* the court concluded that there were no obligations remaining unperformed by the debtor. Thus, the operating agreement did not constitute an executory contract. In reaching this conclusion, the court looked for all possible unperformed duties, both as a member and as a manager, and found none.

This case is very similar to *Garrison-Ashburn*. The debtor, Tsiaoushis, is not a manager. Although he was named one of the two initial managers, he ceased to be a manager prior to the filing of the petition in bankruptcy. At that time, Calomiris became the sole acting manager. Thus, as in *Garrison-Ashburn*, the debtor has no duties as a manager.

The court examined the operating agreement in this case and finds that Tsiaoushis has no unperformed duties arising as a member of the limited liability company. Calomiris suggests only one, which he argues may arise under paragraph ¶2.3 of the operating agreement. Paragraph 2.3 provides that the parties by unanimous consent may determine that additional capital funds are

3

necessary and that they be paid by the members. There is no obligation to provide additional capital contributions except by virtue of ¶2.3. Calomiris argues that there may be a fiduciary duty on the part of each member to vote for an additional capital contribution in some circumstances. He argues by way of analogy to a closely held corporation where majority and minority shareholders have fiduciary duties to other shareholders in certain limited circumstances. He does not cite any case law that supports this proposition in the context of a limited liability company but only raises the possibility that because there may be a similar obligation in a closely held corporation, there may also be such an obligation in a limited liability company. This type of obligation is not sufficient under the Countryman definition. It is hypothetical. It is remote. There are no facts to suggest that it may ever come to fruition. The failure to perform a remote and speculative fiduciary duty, if one exists, is not a "material breach excusing the performance of the other."[1]

Calomiris cites various cases concerning limited liability companies. While some reach the conclusion that a particular operating agreement is an executory contract, they all utilize the same analysis this court adopted in *Garrison-Ashburn*. In *In re Capital Acquisitions & Management Corp.,* 341 B.R. 632 (Bankr.N.D.Ill. 2006), the court stated:

> Having reviewed the specific operating agreement at issue in this case, and finding neither current obligations nor any role, let alone an important one, for CAMCO in the management of the LLC, the court concludes that the Operating Agreement is not an executory contract.

*Id.* at 636-637. The court used the same analysis as all the other courts. It started with the Countryman definition of executory contract. In examining the operating agreement, it did not get past the first criterion: the existence of unperformed duties. No further analysis was necessary. The operating agreement was not an executory contract.

---

[1] Calomiris does not discuss the impact, if any, of Bankruptcy Code §365(e)(2)(B).

4

*Movitz v. Fiesta Investment, LLC (In re Ehmann)*, 319 B.R. 200 (Bankr.D.Ariz. 2005) follows the same analysis. Again, the court reviewed the operating agreement. The court stated that:

> While Fiesta undoubtedly owes many obligations to its members pursuant to the Operating Agreement, for the contract to be executory there would also have to be some material obligation owing to the company by the member. Moreover, such member's obligation must be so material that if the member did not perform it, Fiesta would owe no further obligations to that member.

*Id.* at 204. It found no such obligations on the part of the debtor and held that the operating agreement was not an executory contract.

*In re Daugherty Construction, Inc.,* 188 B.R. 607 (Bankr.D.Neb. 1995) applied the same analysis, but to different facts. The court found that all members had a continuing obligation to participate in management and to contribute capital. One member had an obligation to provide general contractor services and to make a cash collateral contribution. Two other members were obligated to contribute developer services. The court concluded that "the unperformed obligations of LLC members *inter se* are executory obligations which, if not performed, would constitute a material breach excusing performance by other members." *Id.* at 612. It held that the operating agreement was an executory contract.

*Broyhill v. DeLuca (In re DeLuca),* 194 B.R. 65 (Bankr. E.D.Va. 1996) follows the same analysis and, based on the facts of the case, also held that the operating agreement was an executory contract. It stated:

> Upon careful consideration, this court concludes that the operating agreement . . . is an executory contract, since the object of the agreement – the development of the Parc City Center project – has not yet been accomplished and the parties have on-going duties and responsibilities to bring the project to a successful conclusion.

*Id.* at *77.*

The analysis used to determine whether a particular limited liability company operating agreement is an executory contract under Bankruptcy Code §365(e)(1) is clear. There is no *per se* rule. Each operating agreement is separately analyzed. The courts, utilizing the Countryman definition, examine the operating agreement to determine whether there are unperformed obligations on the part of the parties. If not, the operating agreement is not an executory contract. *Garrison-Auburn; Capital Acquisitions; Fiesta.* If there are unperformed obligations of both the debtor and the other party or parties, the court must determine whether, if not performed, non-performance would constitute a material breach excusing the other party from further performance. If so, the operating agreement is an executory contract. *Daugherty; Deluca.* The reported cases go no further. None, after determining that an operating agreement is an executory contract, evaluates the applicability of §365(e)(2) which exempts certain executory contracts from the application of the *ipso facto* prohibition. That would be the final step in the analysis.

The court concludes that the Endeka operating agreement is not an executory contract. Thus, §365(e)(1) of the Bankruptcy Code is not applicable and ¶¶9.1 and 9.2 of the operating agreement are valid and fully enforceable.

Alexandria, Virginia.
January 19, 2007

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

Janet M. Meiberger
Thomas F. Murphy
Linda D. Regenhardt
Richard E. Hagerty

13354